# EXHIBIT F

Case 1:23-cv-00494-PLM-SJB    ECF No. 23-6,  PageID.105    Filed 02/26/24    Page 2 of 20

Cain v. City of Detroit, Not Reported in Fed. Supp. (2022)
2022 WL 3337135

2022 WL 3337135
Only the Westlaw citation is currently available.
United States District Court, E.D.
Michigan, Southern Division.

Derrick CAIN, Plaintiff,
v.
CITY OF DETROIT, et al., Defendants.

Case No. 20-cv-11099
|
Signed April 22, 2022

**Attorneys and Law Firms**

Derrick Cain, Detroit, MI, Pro Se.

Calvert A. Bailey, Christopher Kent Michels, City of Detroit, Law Department, Detroit, MI, Raymond R. Garant, Mike Morse, P.C., Southfield, MI, for Defendants City of Detroit, Dennis Christie.

Allegra Marie Lanni, Wayne County Corporation Counsel, Detroit, MI, for Defendant Jane Gillis.

**OPINION & ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO COMPEL (ECF No. 48) AND DENYING DEFENDANT GILLIS'S MOTION TO STRIKE (ECF No. 53)**

ELIZABETH A. STAFFORD, United States Magistrate Judge

**I. Introduction**

*1 Plaintiff Derrick Cain moves to compel defendants' responses to discovery requests. ECF No. 48. Defendant Jane Gillis moves to strike Cain's motion, arguing that he failed to seek concurrence and that the motion is moot given her recent responses. ECF No. 53. Defendants City of Detroit and Dennis Christie oppose Cain's motion and have supplied supplemental responses to three discovery requests. ECF No. 55. After reviewing the record, the Court **GRANTS IN PART AND DENIES IN PART** Cain's motion and **DENIES** Gillis's motion.

**II. Background**

Cain alleges that his civil rights were violated when Detroit police officers searched his home and arrested him under a search warrant. ECF No. 1, PageID.2, ¶ 7.[1] He claims that during the four days he was in custody, he was never advised of his Miranda rights, provided a prompt judicial determination of probable cause, allowed to post bond, or allowed to receive bail or use a telephone. *Id.* at PageID.2, ¶ 8. Cain was arraigned for refusal to be fingerprinted—allegedly based on fabricated evidence and a complaint containing inconsistencies—and was released on personal bond. *Id.* at PageID.2, ¶¶ 9-11. Several weeks later, the criminal charges arising from the events were dismissed. *Id.* at PageID.2, ¶ 11.

Cain asserts several claims, including violations of the Fourth, Fifth, and Fourteenth Amendments, false arrest, false imprisonment, malicious prosecution, fabrication of evidence, civil conspiracy, fraud, and a *Monell* claim based on the City's alleged acquiescence to unconstitutional conduct by its officers. *Id.* at PageID.2-3. Cain claims he suffered emotional distress and requests $120,000 in punitive damages. *Id.* at PageID.3.

**III. Analysis**

A.

Under Federal Rule of Civil Procedure 26(b), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense," except that the Court must consider proportionality factors, including "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Showing relevance is an "extremely low bar." *In re Ford Motor Co. Spark Plug & 3-Valve Engine Prod. Liab. Litig.*, 98 F. Supp. 3d 919, 925 (N.D. Ohio 2014) (noting that Fed. R. Evid. 401 deems evidence relevant if it has "*any* tendency to make a fact more or less probable").

B.

To begin, Gillis moves to strike Cain's motion because he failed to seek concurrence. Movants are required to "ascertain whether the contemplated motion ... will be opposed" and to show that the parties conferred or why a conference was not feasible. E.D. Mich. LR 7.1(a); *see* Rule 37(a)(1). Courts in this district have denied motions for noncompliance with

Case 1:23-cv-00494-PLM-SJB    ECF No. 23-6,   PageID.106    Filed 02/26/24    Page 3 of 20

Cain v. City of Detroit, Not Reported in Fed. Supp. (2022)
2022 WL 3337135

this rule. *Oullette v. Fountainview of Monroe*, No. 11-13082, 2012 WL13009196, at *2 (E.D. Mich. July 17, 2012) (citing *Little Caesar Enters., Inc. v. Vega*, No. 11-13163, 2011 WL 3235475 (E.D. Mich. July 28, 2011); *Dragoiu v. HUD*, No. 10-11896, 2011 WL 2174532 (E.D. Mich. June 3, 2011)).

**\*2** Cain states that he sought defendants' concurrence during his deposition in March 2022 and that defendants informed him that they had responded to the discovery requests. ECF No. 48, PageID.350. Gillis disputes this statement, claiming that Cain never discussed the requests at issue in his motion. ECF No. 53, PageID.402. But Gillis provides no support for her claim. And since Cain is a pro se litigant, it is possible there was some miscommunication. Because there is no objective evidence showing that Cain's representation was false, the Court declines to strike the motion to compel.

**C.**

Cain seeks to compel defendants' responses to 25 discovery requests comprised of interrogatories and requests for production. He notes Gillis's lack of response and challenges the adequacy of the City and Christie's responses. The Court first addresses Cain's motion about Gillis and then turns to the City and Christie.

**1.**

Rules 33 and 34 give parties 30 days to respond to interrogatories and requests for production. Rules 33(b)(2); 34(b)(2)(A). "As a general rule, failure to object to discovery requests within the thirty days provided by Rules 33 and 34 constitutes a waiver of any objection." *Siser N. Am., Inc. v. Herika G. Inc.*, 325 F.R.D. 200, 210 (E.D. Mich. 2018) (citation and internal quotation marks omitted). Cain served discovery requests on defendants on February 9, 2022. ECF No. 48, PageID.355. The City and Christie timely responded on March 1, ECF No. 48, PageID.363, but Gillis did not respond until April 4, after Cain moved to compel, ECF No. 53-1, PageID.405. Thus, Gillis waived any objections to Cain's discovery requests.

Gillis argues that her untimely responses render Cain's motion moot. ECF No. 53, PageID.402. But the Court cannot tell if Gillis's responses were complete because she attached to her motion to strike only the final page of her responses. *See* ECF No. 53-1, PageID.405. Gillis is ordered to fully respond to Cain's discovery requests directed to her, except for those subjects limited below.

**2.**

As to the City and Christie, Cain seeks production of: (1) documents about police misconduct, including complaints filed against the Detroit Police Department (DPD) and investigations of the DPD; (2) the DPD's policies and procedures; (3) instances of suspects being held in custody for more than 48 hours without judicial review; and (4) Christie's employment performance. ECF No. 48, PageID.353. Cain claims this information is relevant to proving a pattern of similar constitutional violations in support of his *Monell* claim. ECF No. 48, PageID.354 (citing *Connick v. Thompson*, 563 U.S. 51, 62 (2011)).

Requests 5, 6, 7, 8, 14, 19, and 25 seek information about reports, internal investigations, and lawsuits stemming from police misconduct. *See* ECF No. 48, PageID.357-363. For example, Request 5 seeks "each and every" document from the DPD and its internal affairs department "related to the investigation of police misconduct, their findings, and disciplinary actions if any were taken from 2012-2022," while Requests 6, 7, 8, and 25 ask for the names of all DPD officers investigated for misconduct or named in a criminal or civil lawsuit for actions taken in the performance of their duties. *Id.* at PageID.357-358. The City and Christie object that these requests are overbroad, and the Court agrees. Beyond his failure to specify the types of documents he seeks, Cain requests information about police misconduct of any kind rather than targeting the specific misconduct alleged here— such as false arrest and fabrication of evidence. A document request must "describe with reasonable particularity each item or category of items to be inspected." Rule 34(b)(1)(A); *see also Waskul v. Washtenaw Cnty. Cmty. Mental Health*, –– F. Supp. 3d ––, No. CV 16-10936, 2021 WL 5049154, at *1, n. 1 (E.D. Mich. Oct. 31, 2021); *Design Basics, LLC v. DJW & Assocs. of Mich., Inc.*, No. 17-12272, 2019 WL 7584399, at *2 (E.D. Mich. Aug. 6, 2019) ("While some subset of the documents sought in [defendant's subpoenas] are likely relevant to this case, all of them are not.").

**\*3** But defendants overused their boilerplate objections, stating that many requests were "overbroad, unduly burdensome and [ ] irrelevant to any party [sic] claims or defenses and not proportional to the needs of the case." ECF No. 48, PageID.356-363. "Boilerplate objections are

Case 1:23-cv-00494-PLM-SJB ECF No. 23-6, PageID.107 Filed 02/26/24 Page 4 of 20

Cain v. City of Detroit, Not Reported in Fed. Supp. (2022)
2022 WL 3337135

legally meaningless and amount to a waiver of an objection." *Siser*, 325 F.R.D. at 209-10. For example, Request 21 seeks identification of criminal cases that were dismissed from 2012 to 2022 because of a false arrest or a false report, and Request 23 seeks the names of DPD officers who were investigated for or charged with fraud, false arrest, or filing a false report from 2012 to 2022. ECF No. 48, PageID.362-363. These requests are relevant because, for Cain to support his *Monell* claim, he must show that the City tacitly approved of a persistent pattern of illegal activity, among other factors. *Wallace v. Coffee Cnty., Tenn.*, 852 F. App'x 871, 876 (6th Cir. 2021).

And although the City and Christie claim that responding to these requests would be burdensome, a party asserting this objection "must submit affidavits or other evidence to substantiate its objections," *Cratty v. City of Wyandotte*, 296 F. Supp. 3d 854, 859 (E.D. Mich. 2017), and may not rest on "bald generalizations or a conclusory assertion that production will be time-consuming and/or expensive," Hon. Craig B. Shaffer, The "Burdens" of Applying Proportionality, 16 Sedona Conf. J. 55, 93 (2015). The City and Christie have not met this burden and are ordered to produce this information.

Requests 1, 2, 3, 9, and 10 seek the DPD's policies and procedures. ECF No. 48, PageID.356-359. In response to Requests 1 and 3—seeking policies and procedures for ensuring prompt judicial review of arrests and for handling citizen complaints of police misconduct—the City and Christie provided a weblink to the relevant policies and supplemented their response with copies of the policies. ECF No. 48, PageID.356-357; ECF No. 57-1, PageID.492-520. Those policies also address Request 2, which seeks policies about arrests and filing criminal complaints. ECF No. 48, PageID.357.[2] And in response to Requests 9 and 10—which seek Christie's and Gillis's oaths of office and the City's charter—the City and Christie provided the oath of office for police officers and a weblink to the Detroit City Code. *Id.* at PageID.358-359. Cain has not explained why this production fails to adequately respond to the requests. *See Thomas v. Heberling*, No. 1:12-cv-01248, 2015 WL 3660323, at *3 (E.D. Cal. June 10, 2015) (denying a motion to compel because the plaintiff failed to explain how the documents produced were inadequate). The City and Christie need not respond to these requests further.

Requests 12 and 15 seek information about prompt judicial review of arrests. Request 12 seeks case names and docket numbers for every suspect arrested and held for more than 48 hours without judicial review from 2012 to 2022. ECF No. 48, PageID.359. In response, the City and Christie certified that they do not possess the information, which is with the Michigan Department of Corrections. *Id.* Cain has not challenged this assertion, and "[t]he Court cannot compel a party to provide information that he or she does not possess any more than it can compel that party to produce documents that do not exist or are not in his possession, custody or control." *Waskul*, 2021 WL 5049154, at *9 (internal quotation marks omitted).

Request 15 seeks "[a]ll documents, reports, investigative reviews, statistical data, correspondences, supervisory review, of all arrests for probable cause, and pertaining to prompt judicial review" from 2012 to 2022. ECF No. 48, PageID.360. The Court again finds that this request is overbroad. Cain requests a broad range of documents about arrests for probable cause, which would involve all arrests made by DPD officers. And as discussed above, case documents about suspects held in custody without prompt judicial review are not in the City's or Christie's possession.

**\*4** Requests 17, 22, and 24 seek information about Christie's employment performance. *Id.* at PageID.361-362. Request 17 seeks documents about Christie's "employment performance reviews, psych evals, superior reviews, [and] any disciplinary actions[.]" *Id.* at PageID.361. The City and Christie correctly argue that police officers have a constitutionally protected privacy interest in personal information in their employment records. *See Kallstrom v. City of Columbus*, 136 F.3d 1055, 1064 (6th Cir. 1998). But this principle does not prevent discovery of disciplinary records or performance evaluations when those documents are relevant to a civil rights claim. *Sanford v. City of Detroit*, 355 F. Supp. 3d 619, 622 (E.D. Mich. 2019); *Ivanovski v. City of Dearborn Heights*, No. 07-CV-10731, 2007 WL 2952096, at *2 (E.D. Mich. Oct. 9, 2007). And Christie may redact personal information such as his address, phone number, driver's license, social security number, bank account, and medical information protected under HIPAA, as well as his family members' names, addresses, and phone numbers. *See Sanford*, 355 F. Supp. 3d at 622.

The City and Cain also argue that these documents are protected by the deliberative process privilege. Under this privilege " 'intra-government documents which reflect advisory opinions, recommendations, and deliberations comprising part of the process by which governmental decisions are formulated' are protected from disclosure in

Case 1:23-cv-00494-PLM-SJB ECF No. 23-6, PageID.108 Filed 02/26/24 Page 5 of 20

Cain v. City of Detroit, Not Reported in Fed. Supp. (2022)
2022 WL 3337135

discovery." *Hoxie v. Livingston Cnty.*, No. 09-CV-10725, 2009 WL 5171845, at *4 (E.D. Mich. Dec. 22, 2009) (quoting *Dowd v. Calabrese*, 101 F.R.D. 427, 430 (D.D.C. 1984)). But "[f]actual material, including reports and summaries, is not protected by the privilege." *Id.* (citing *Frankenhauser v. Rizzo*, 59 F.R.D. 339, 344 (E.D. Pa. 1973)). Thus, Cain is entitled to production of reports, summaries, and other factual material in Christie's employment records, subject to redaction of personal information as noted above.

Request 22 seeks all misdemeanor or felony cases initiated by Christie from 2012 to 2022 that were dismissed. ECF No. 48, PageID.362. This request is overbroad because it seeks Christie's cases that were dismissed for any reason rather than targeting the specific misconduct alleged. But cases initiated by Christie that were dismissed because of a false arrest or false report would be directly relevant to Cain's *Monell* claim premised on the City's alleged tolerance of this conduct. And since this information would be encompassed within the production responsive to Request 21, it would impose no added burden. Thus, the City and Christie are ordered to produce this information.

Request 24 seeks all civil actions filed against Christie from 2012 to 2022. The City and Christie supplemented their response to state that Christie "has not been a part of any other civil lawsuit." ECF No. 55-2, PageID.436. Because this response fully addresses the request, this issue is moot.

The Court declines to compel responses to the rest of Cain's discovery requests. Request 4 seeks "all documents, logs, entries, [and] reports" made during Cain's detention in April 2017, and Request 16 seeks information about bonds issued in two state-court proceedings against Cain. ECF No. 48, PageID.357, 360. The City and Christie responded that they do not possess this information. *Id.* Cain has not challenged this assertion, and the Court cannot compel a party to produce information it does not possess. *See Waskul*, 2021 WL 5049154, at *9. Request 11 seeks information about defendants' insurance policies. ECF No. 48, PageID.359. This request is entirely unrelated to any claim, and Cain provides no rationale for why this information is relevant. Because Requests 13 and 18 are directed to Gillis, the City and Christie need not respond. *See* ECF No. 48, PageID.360-361. Finally, Request 20 asks the City to identify what claims or defenses concern Cain's employment history. ECF No. 48, PageID.361. Since the Court addressed the relevance of Cain's employment history in another order, defendants need not respond. *See* ECF No. 52, PageID.392.

### IV. Conclusion

***5** The Court orders that Cain's motion to compel is **GRANTED IN PART AND DENIED IN PART** (ECF No. 48), and Gillis's motion to strike is **DENIED** (ECF No. 53).

**All Citations**

Not Reported in Fed. Supp., 2022 WL 3337135

---

### Footnotes

1      The Court granted Cain leave to file an amended complaint by April 8, 2022. ECF No. 52, PageID.396. He did not do so. Thus, the original complaint is the operative one.

2      The request for policies about filing a complaint is relevant to Gillis, as a criminal complaint is endorsed by the prosecutor. *See* Mich. Ct. R. 6.101(C).

---

**End of Document**      © 2024 Thomson Reuters. No claim to original U.S. Government Works.

2001 WL 34059032
Only the Westlaw citation is currently available.
United States District Court,
W.D. Michigan.

Francesco CARFAGNO, et al., Plaintiffs,

v.

JACKSON NATIONAL LIFE
INSURANCE CO., et al., Defendants.

No. 5:99CV118.
|
Feb. 13, 2001.

OPINION

SCOVILLE, Magistrate J.

 **\*1**  This is a putative class action falling within the court's diversity jurisdiction. The case is in the early discovery stage, during which the parties are allowed to pursue discovery relevant to the class action certification issues. By order entered December 19, 2000 (docket # 107), District Judge David W. McKeague extended the time for the filing of plaintiffs' anticipated motion for class certification until thirty days after the court rules on pending dispositive motions. By order entered December 14, 2000 (docket # 96), I denied plaintiffs' motion for an enlargement of time in which to complete class certification discovery. That denial, however, was subject to a ruling on plaintiffs' pending motion to compel discovery (docket # 98), which I now take up.

Plaintiffs' motion concerns two general areas. The first is the adequacy of the responses by defendants to plaintiffs' interrogatories and requests for production of documents. The second concerns the propriety of instructions not to answer questions propounded to defendants Fernando and Cora Turpin at their depositions.

A. *Discovery Requests Served on Jackson National*
Plaintiffs seek an order compelling Jackson National to answer certain interrogatories and produce documents in response to Rule 34 requests. Plaintiffs served these requests on August 7, 2000. Jackson National served answers and objections on October 9, 2000, thirty days after the expiration of the deadline established in Rules 33 and 34 for responses to interrogatories and document requests. The record does not disclose any stipulation or order extending the time for Jackson National to respond. *See* FED. R. CIV. P. 29. The court is therefore met at the threshold with an assertion by plaintiffs that Jackson National has waived its objections as a result of its untimely responses to the discovery requests.

As a general rule, failure to object to discovery requests within the thirty days provided by Rules 33 and 34 "constitutes a waiver of any objection." *See Richmark Corp. v. Timber Falling Consultants,* 959 F.2d 1468, 1473 (9th Cir.1992); *Standard Chlorine of Delaware, Inc. v. Sinibaldi,* 821 F.Supp. 232, 261 (D.Del.1992) (collecting cases); *see generally* 8A CHARLES ALAN WRIGHT, ARTHUR R. MILLER, & RICHARD L. MARCUS, FEDERAL PRACTICE & PROCEDURE § 2173 (2d ed.1994). In arguing against the application of this general rule to the present case, Jackson National makes two essential arguments. First, it asserts that waiver under Rules 33 and 34 is not automatic, but is more in the nature of a sanction for egregious discovery abuse that prejudices the opponent. Second, defendant asserts that if a waiver occurred, it does not extend to the attorney-client privilege or work-product immunity. Neither contention is defensible.

Jackson National does not attempt to excuse, or even explain, its delay in responding to plaintiffs' discovery requests. Rather, defendant asserts only that its conduct was not egregious or prejudicial, and that a waiver of objections is essentially a sanction for egregious discovery abuse. Although some cases discuss waiver in these terms, *see, e.g., Scaturro v. Warren & Sweat Mfg. Co., Inc.,* 160 F.R.D. 44, 46 (M.D.Pa.1995), this is not an accurate characterization of the waiver doctrine. If the time limits set forth in the discovery rules are to have any meaning, waiver is a necessary consequence of dilatory action in most cases. "Any other result would ... completely frustrate the time limits contained in the Federal Rules and give a license to litigants to ignore the time limits for discovery without any adverse consequences." *Krewson v. City of Quincy,* 120 F.R.D. 6, 7 (D.Mass.1988). "Discovery deadlines are intended to ensure the efficient progress of a lawsuit and counsel are expected to comply with them." *Blumenthal v. Drudge,* 186 F.R.D. 236, 240 (D.D.C.1999). To be sure, courts will examine the circumstances of each case, including the reason for tardy compliance, prejudice to the opposing party, and the facial propriety of the discovery requests, to determine whether enforcement of the waiver is equitable. *See, e.g., Shenker v. Sportelli,* 83 F.R.D. 365, 367 (E.D.Pa.1979) (examining discovery requests, to which objections had been waived

by untimely response, to ensure that the requests were not "patently improper").

**\*2** Jackson National has not raised any circumstance that might induce the court to relieve it of the consequences of its waiver. Jackson National has not attempted to explain the circumstances surrounding its tardiness in responding. Rather, in a somewhat cavalier fashion, it merely asserts that plaintiffs have not been prejudiced. This is insufficient. The court therefore rejects Jackson National's first argument against a finding of waiver.

Jackson National further asserts that, even if it has waived its objections, waiver does not extend to attorney-client privilege or work-product immunity. The majority is rule to the contrary: "This rule applies with equal force to all objections, including those based on attorney-client privilege or attorney work product." *Cleveland Indians Baseball Co. v. United States,* No. 96–cv–2240, 1998 WL 180623, at \* 4 (N.D.Ohio Jan. 28, 1998); *accord Peat, Marwick, Mitchell & Co. v. West,* 748 F.2d 540, 542 (10th Cir.1984) ("A party seeking to assert the privilege must make a clear showing that it applies. Failure to do so is not excused because the document is later shown to be one which would have been privileged if a timely showing had been made."); *Krewson,* 120 F.R.D. at 7. In support of its assertion of a contrary rule, Jackson National cites three cases espousing a minority rule. For example, in *Jayne H. Lee, Inc. v. Flagstaff Indus. Corp.,* 173 F.R.D. 651, 657 n. 16 (D.Md.1997), the court cited the majority rule in favor of a waiver of subsequent claims of privilege, but dismissed the rule in a single sentence: "This rule, however, I find is too draconian." This is hardly persuasive authority to deviate from the general rule. *Smith v. MCI Telecommunications Corp.,* 124 F.R.D. 665 (D.Kan.1989), also relied upon by Jackson National, does not support its position. *Smith* does not hold that a waiver arising from untimely objections does not reach privileged material. It stands only for the unobjectionable proposition that a court may, in its discretion, relieve a party of its waiver and consider the merits of an objection. 124 F.R.D. at 686–87. In the present case, however, Jackson National has not advanced any persuasive reason why the court should exercise its discretion to relieve Jackson National of the consequences of its waiver. As Professor Wright points out, there is "no reason to make an exception" for attorney-client material when applying the waiver rule. 8A WRIGHT, MILLER & MARCUS, § 2173 at 295–96.

A second and independent reason supports this result. As a result of 1993 amendments to Rule 26 of the Rules of Civil Procedure, documents withheld on a claim of privilege or immunity must be described in a privilege log. FED. R. CIV. P. 26(b)(5). Although Jackson National's brief makes vague statements concerning the possible privileged nature of documents called for in requests no. 6, 11 and 13, it has not submitted to this court a privilege log in support of its objections, as required by Rule 26(b)(5). Defendant's failure to provide the court with information of sufficient specificity to permit the court to determine whether the privilege asserted applies to the withheld documents provides an independent ground for finding a waiver of any privilege or immunity. *See United States v. Construction Prod. Research, Inc.,* 73 F.3d 464, 473–74 (2d Cir.1996); *Smith v. Dow Chemical Co.,* 173 F.R.D. 54, 57–58 (W.D.N.Y.1997).

1. *Interrogatories*

**\*3** Plaintiffs' motion to compel answers to interrogatories propounded to Jackson National involves interrogatories 1, 2, 3, 4, 5, 10, and 12. With regard to most of these interrogatories, Jackson National asserted a general objection to the form of the interrogatory and then proceeded to answer it. The general objections, in accordance with the court's previous ruling, are waived. This holding has little consequence, however, because Jackson National went on to answer each interrogatory.

The court has reviewed the interrogatories and answers and finds most of plaintiffs' contentions to be meritless. With exceptions noted below, Jackson National answered each interrogatory, but plaintiffs now quarrel with the answer, essentially because plaintiffs should have asked a different question. Interrogatory no. 1 is typical. It sought an identification of all individuals that represented Jackson National in marketing or selling life insurance products within Mexico. The answer is that Jackson National is not aware of any individuals who sold life insurance products within Mexico on its behalf. Plaintiffs' motion now seeks to compel Jackson National to identify persons who dealt with policyholders "who reside in Mexico." This is a different question, one that was not asked in interrogatory 1.

The court does find several of Jackson National's answers inadequate, however. Interrogatory no. 2 asked for an identification of all employees of the company who-were involved in the preparation of underwriting criteria for sales to Mexican residents. The answer identified only two current employees, without identifying former employees. Jackson National has not justified its failure to identify former employees. In response to interrogatory no. 10, which

requested the number of policies sold to Mexican residents from 1983 to the present, Jackson National answered only with regard to policies that did not terminate before January 1, 1997. It further stated that its records only indicate the current residence of policyholders. Plaintiffs correctly point out that the question speaks as of the time the policy was issued and that contemporaneous records, such as the policy application, would certainly show the residence of the policyholder. Jackson National has not advanced any reason why answering the question by searching original records would somehow be burdensome or beyond its capability. Plaintiffs have not, however, justified their request for a records search all the way back to 1983, a date that seems unreasonable in scope. Jackson National will be required to amend its answer to interrogatory no. 10, answering for the past ten years.

The court has examined the other interrogatories that are the subject of plaintiffs' motion and finds Jackson National's answers to be sufficient.

2. *Document Production Requests*

Plaintiffs seek to compel production of documents in response to request nos. 6, 7, 10, 11, 13, 14, and 23. The court has previously ruled that defendant waived objections to production of documents fairly called for by these interrogatories. Plaintiffs' motion to compel will therefore be granted.

B. *Requests for Documents Served Upon the Turpins*

 **\*4** Plaintiffs seek to compel production of documents from defendants Fernando and Cora Turpin response to a notice for deposition and request for production of documents first served on October 18, 2000. At the threshold, plaintiffs again argue that any objection by the Turpin defendants has been waived by their failure to respond to the document request until December 1, 2000. The circumstances surrounding this assertion of waiver, however, differ from those relevant to Jackson National. The record indicates that plaintiffs' counsel served the original deposition notice and document request without having cleared the date with defense counsel. Not surprisingly, the date proved inconvenient and was rescheduled by agreement between counsel. As a result of the agreement, plaintiffs' counsel served an amended notice of depositions on November 28, 2000, rescheduling the depositions for December 4 and 5. The amended notice of depositions contained the same list of documents as that reflected on the original notice. The Turpins responded with objections and the production of documents on December 1, 2000, in time for their depositions.

In the circumstances described above, it was reasonable for defense counsel to assume that production of documents on December 1, in response to the amended notice of depositions, was timely, especially in the absence of any contrary advice from plaintiff's attorney. Even if the Turpin defendants were guilty of a technical waiver, the confusing circumstances, for which plaintiffs' counsel was partly to blame, justify the exercise of discretion to relieve them of any waiver. In light of this holding, the court will examine the objections by the Turpin defendants to production of documents and plaintiffs' motion to compel.

The motion to compel seeks a ruling on the objections of the Turpin defendants to virtually all of plaintiffs' requests. Such a blunderbuss motion was necessitated by the assertion of a boilerplate objection to each of the document requests. In response to each request, the Turpins first objected to the request "because it is vague, ambiguous, overbroad, and not reasonably calculated to lead to the discovery of admissible evidence," regardless of the form or content of the request. The response often went on to say that all responsive documents would nevertheless be produced, or that no such documents existed. The court strongly condemns the practice of asserting boilerplate objections to every discovery request. See *St. Paul Reinsurance Co., Ltd. v. Commercial Financial Corp.,* 198 F.R.D. 508, 2000 WL 1737746, at \* 3 (N.D.Iowa Nov. 22, 2000). The objections are, on the whole, frivolous. Plaintiffs' document requests were not vague, ambiguous, over broad, or beyond the scope of allowable discovery in most instances. The assertion of frivolous, perfunctory objections to every discovery request has led to unnecessary motion practice. The Turpin defendants will be sanctioned $300 for the assertion of objections that were not substantially justified. FED. R. CIV. P. 37(a)(4)(A).

 **\*5** By the same token, plaintiffs acted unreasonably in moving to compel with regard to every document request, even those for which the Turpins responded that they had no documents. Plaintiffs' blunderbuss motion created unnecessary work for all parties and the court. Plaintiffs are warned that further unreasonable discovery practice will result in the imposition of sanctions.

For the vast majority of plaintiffs' document requests directed to the Turpins, the Turpins either stated that no documents existed or that all documents would be produced. There is

therefore no issue for the court to resolve with regard to most discovery requests. The exceptions are discussed below.

Request no. 9 required production of documents sent to or received from any other insurance company concerning business within Mexico or with Mexican residents or nationals. The Turpins objected on the grounds of confidentiality and privacy. The objection is meritless, in light of the entry of a protective order in this case. The Turpins will be compelled to produce documents responsive to request no. 9.

Request no. 11 required production of documents identifying all persons who gave legal advice to the Turpins regarding sales within Mexico or to Mexican residents. The Turpins raised attorney-client privilege and work-product immunity. They have, however, failed to sustain their burden to establish the applicability of such privileges and immunities. In general, the identity of a person's lawyer is not a privileged matter. *See Tornay v. United States,* 840 F.2d 1424, 1426 (9th Cir.1988). The question was narrow, confined only to this issue. The Turpins could have redacted the substance of any privileged matter, while producing responsive documents. The Turpins will be compelled to comply with request no. 11, with the right to redact privileged communications or work product.

Request no. 12 required production of advertising and other promotional materials used for sale of insurance to Mexican residents or nationals. In response, the Turpins unilaterally narrowed production to only those Jackson National products purchased by the plaintiffs or those things being used by the Turpins at the time the plaintiffs purchased their policies. Discovery into the class action allegations in this case, however, requires more, and the Turpins have not borne their burden of supporting their objection. They will be compelled to respond fully to request no. 12.

Request no. 14 required production of all lists reflecting the name and address of any individual within Mexico, or Mexican residents, who purchased life insurance products from Jackson National or the Turpins from 1983 to the present. In response, the Turpins assert that the privacy interests of the policyholders "trumps" the plaintiffs' need for such information. The Turpins cite nothing in support of their assertion of a "policyholder's privilege," and this court is not in the business of fashioning *ad hoc* privileges under the laws of the several states. The Turpins will be compelled to provide documents responsive to request no. 14, covering the past ten years.

*6 Request no. 20 requires production of newsletters and other communications with Jackson National agents and brokers related to life insurance products sold within Mexico or to Mexican residents. The Turpins unilaterally restricted their response to the sale of products for the period during which plaintiffs purchased their policies. They have not sustained their burden of supporting such a limitation. They will be compelled to comply with request no. 20 for a period covering the past ten years.

Request no. 23 requires production of reports showing commissions and business generated by persons selling Jackson National insurance products within Mexico to Mexican residents. The Turpins objected on the basis of confidentiality and proprietary information, asserting that production would violate the privacy interests of Jackson National, policyholders, and the Turpins themselves. The Turpins assert that such information is irrelevant and that they have a proprietary interest in maintaining the confidentiality of their financial records. Such interest, if any, does not rise to the level of a recognized privilege and must yield to the needs of the case. The information sought could be directly relevant to establishing the scope of sales to Mexican residents and the discovery of witnesses who might shed light on the activities in Mexico, if any, of the defendants. The Turpins will be required to comply with request no. 23 for the period covering the past ten years.

In response to request nos. 26 and 27, which request the production of form letters used by the Turpins or Jackson National, the Turpins again unilaterally limited their response to the products purchased by plaintiffs. It is unclear to this court why such a limitation is reasonable in the context of this case. The Turpins will be compelled to comply with request nos. 26 and 27 for the period covering the past ten years.

C. *The Turpin Depositions*

In their motion to compel and "supplemental suggestions" in support of their motion to compel (docket # 99), plaintiffs complain about two series of instructions not to answer questions put to defendants Fernando and Cora Turpin. The first series of questions related to conversations between the Turpins and one of the attorneys for Jackson National, in preparation for the depositions. Questioning of the Turpins revealed that the Turpins met with Mr. Jones, one of Jackson National's attorneys, before the deposition, and that their own

counsel was not present for the entire preparation session. After the witnesses answered these foundational questions, their counsel instructed them not to answer on the basis of attorney-client privilege. The second series of questions concerned whether the witnesses had reviewed documents before the time of the deposition. Mrs. Turpin was prevented by her attorney from even answering the question whether she reviewed any documents at all. (Cora Turpin Dep., 8–9). Counsel ultimately allowed Mr. Turpin to answer "yes" or "no" to the question whether he reviewed documents, but was not allowed to answer further questions. (Fernando Turpin Dep., 40–42).

1. *Conversations Including Jackson National's Counsel*

**\*7** Plaintiffs seek to compel disclosure of the content of conversations involving the Turpins at which Mr. Jones, counsel for co-defendant Jackson National, was present. Plaintiffs argue that the presence of Mr. Jones, a stranger to the attorney-client relationship between the Turpins and their counsel, destroys any privilege that might otherwise attach. As this is a diversity case governed by the law of the State of Texas,[1] this court must apply Texas privilege law to resolve this issue. FED.R.EVID. 501; *see Jewell v. Holzer Hosp. Found., Inc.,* 899 F.2d 1507, 1513 (6th Cir.1990).

As a general rule, the presence of a third party during discussions between the attorney and client will destroy the privilege. *See Clark v. State,* 261 S.W.2d 339 (Tex.Crim.App.1953). A major exception to this rule, however, is the joint defense doctrine. The State of Texas has adopted this doctrine in its evidence rules, which grant the protection of the attorney-client privilege to communications by the client "to a lawyer or a representative of a lawyer representing another party in a pending action and concerning a matter of common interest therein." TEX.R. EVID. 503(b)(1)(C); *see Rio Hondo Implement Co. v. Euristi,* 903 S.W.2d 128, 131 (Tex.App.1995) (Texas Rules of Evidence recognize a joint defense privilege). The joint defense privilege applies to communications between a client or the client's lawyer and a lawyer representing a co-party in a pending action concerning a matter of common interest. *See In re LTV Sec. Lit.,* 89 F.R.D. 595, 604 (N.D.Tex.1991). In the present case, Jackson National and the Turpins have entered into a joint defense agreement, in which they agree to collaborate in connection with their joint defense, share information, and retain mutual confidences. In these circumstances, the presence of Mr. Jones, counsel for Jackson National, did not destroy the attorney-client privilege. Furthermore, under the very language adopted by the State of Texas in its evidence rules, the presence of counsel for the Turpins was not necessary to the invocation of the privilege. *Accord United States v. Schwimmer,* 892 F.2d 237, 243–44 (2d Cir.1989) ("Neither is it necessary for the attorney representing the communicating party to be present when the communication is made to the other party's attorney.").

Because communications between the Turpins and counsel for Jackson National are protected by the joint defense doctrine, plaintiffs' motion to compel answers to questions involving such conversations will be denied.

2. *Documents Reviewed By the Turpins Before Their Deposition*

Plaintiffs also request that the court overrule objections and instructions not to answer asserted in the depositions of the Turpins and to compel them to fully answer questions concerning documents they reviewed in preparation for their depositions. As the basis for their motion, plaintiffs rely upon Federal Rule of Evidence 612, which provides as follows:

**\*8** Except as otherwise provided in criminal proceedings by section 3500 of title 18, United States Code, if a witness uses a writing to refresh memory for the purpose of testifying, either—

(1) while testifying, or

(2) before testifying, if the court in its discretion determines it is necessary in the interests of justice,

an adverse party is entitled to have the writing produced at the hearing, to inspect it, to cross-examine the witness thereon, and to introduce in evidence those portions which relate to the testimony of the witness. If it is claimed that the writing contains matters not related to the subject matter of the testimony the court shall examine the writing in camera, excise any portions not so related, and order delivery of the remainder to the party entitled thereto. Any portion withheld over objections shall be preserved and made available to the appellate court in the event of an appeal. If a writing is not produced or delivered pursuant to order under this rule, the court shall make any order justice requires, except that in criminal cases when the prosecution elects not to comply, the order shall be one striking the testimony or, if the court in its discretion determines that the interests of justice so require, declaring a mistrial.

There is good reason to conclude that the provisions of Rule 612, which expressly refers to a "hearing," should not apply to depositions. *See* 28 CHARLES ALAN WRIGHT AND V.J. GOLD, FEDERAL PRACTICE & PROCEDURE § 6183, at 453–55 (1993). The vast majority of cases, however, conclude otherwise, holding that Rule 612 is applicable to depositions by operation of Rule 30(c) of the Federal Rules of Civil Procedure. *See, e.g., Sprock v. Peil,* 759 F.2d 312, 317 (3d Cir.1985). I therefore assume that the provisions of Rule 612(2) would apply to this case, allowing the court to compel production of documents used by the deponents to refresh their memory for the purpose of testifying, if the court deems it necessary in the interests of justice.

The Turpins principally argue that Rule 612 should not apply because plaintiffs' counsel failed to establish the critical foundational fact, namely, whether the deponents used any documents to refresh their recollection for the purpose of testifying. The problem with this argument is that the Turpins' counsel cut off questioning prematurely, before counsel was able to lay a proper foundation. Counsel was never allowed to ask the question whether the witnesses' memories were refreshed by review of the documents, nor was counsel allowed to determine the source of the documents reviewed. Defendants are correct in asserting that the witness must actually rely upon documents for his testimony, as a prerequisite for the invocation of Rule 612. *See Burkee Photo, Inc. v. Eastman Kodak Co.,* 74 F.R.D. 613, 615 (S.D.N.Y.1977).

Jackson National has volunteered a brief (docket # 112) addressing the issues pertaining to the Turpin depositions. In that brief, Jackson National speculates that whatever documents the Turpins reviewed had been selected by the Turpins' attorney and that disclosure of the identity of those documents would therefore constitute protected work product. This concept was first recognized by the Third Circuit in *Spork v. Pell,* 759 F.2d 312, 316 (3d Cir.1985), and has been applied by other courts thereafter. The problem with this argument, however, is that there is no factual basis for it. If the Turpins had been allowed to answer proper questions, they might have disclosed that their memories had been refreshed by documents that they themselves compiled or that were shown to them by employees or others. Significantly, the Turpins have not provided an affidavit averring that the only documents reviewed were those compiled by counsel. On the present record, therefore, the court finds that defendants have not sustained their burden of establishing the existence of attorney work product.

**\*9** The Turpins will be ordered to file an affidavit within 14 days identifying the source of documents reviewed in preparation for their depositions. If it turns out that the only documents reviewed were those compiled by defense counsel, the court will sustain a work-product objection. If other documents were involved, however, the court will require their production and the redeposition of the witnesses.

Four other issues arising during the Turpin depositions require brief attention. First, the Turpins refused to reveal the commissions or premiums involved with their business from sales to Mexican nationals. They have failed to establish any privilege or immunity requiring nondisclosure of this information, especially in light of the existence of a protective order. They also refused to disclose who was paying for the costs of their defense. This, again, is not privileged information. *See Tornay,* 840 F.2d at 1426. If defendants wish to assert a joint defense privilege, they are required to establish foundational facts giving rise to the privilege, including any sharing of fees and expenses. The Turpins also apparently refused to answer questions on whether they informed the plaintiffs of the possibility that they would be required to make additional payments on their policies. There is no apparent reason why such objections should be sustained. Finally, plaintiffs complain that some of the answers by the Turpins were "disingenuous ." There is little the court can do about this at the discovery stage of this case.

An order will be entered consistent with this opinion.

*DISCOVERY ORDER*

In accordance with the opinion filed this date:

IT IS ORDERED that plaintiffs' motion to compel (docket # 98) is GRANTED IN PART AND DENIED IN PART. Defendant Jackson National is ordered to answer interrogatory no. 2 as to all employees, including former employees. Jackson National is also ordered to answer interrogatory no. 10. Both answers may be restricted to periods 1991 to the present. Defendant Jackson National is ordered to produce documents responsive to plaintiffs' request nos. 6, 7, 10, 11, 13, 14 and 23.

IT IS FURTHER ORDERED that defendants Fernando and Cora Turpin are sanctioned in the amount of $300.00 pursuant

to Fed.R.Civ.P. 37(a)(4)(A), payable to the plaintiffs within 14 days of this order.

IT IS FURTHER ORDERED that defendants Fernando and Cora Turpin are ordered to produce the following documents:

(1) documents responsive to request no. 9;

(2) documents responsive to request no. 11, with the right to redact privileged communications and work product;

(3) documents responsive to request no 12;

(4) documents responsive to request no. 14 from 1991 to the present;

(5) documents responsive to request no. 20 from 1991 to the present;

(6) documents responsive to request no. 23 from 1991 to the present; and

(7) documents responsive to request nos. 26 and 27 from 1991 to the present.

*10  IT IS FURTHER ORDERED that defendants Fernando and Cora Turpin shall file an affidavit within 14 days of the date of this order identifying the source of documents reviewed in preparation for their depositions.

IT IS FURTHER ORDERED that defendants Fernando and Cora Turpin shall disclose to plaintiffs the identity of the person or persons paying all or any portion of their defense costs. These defendants shall also disclose commissions and premiums involved with their business from sales to Mexican nationals from 1991 to the present.

IT IS FURTHER ORDERED that all interrogatories shall be answered and documents produced within 14 days of entry of this order.

**All Citations**

Not Reported in F.Supp.2d, 2001 WL 34059032

## Footnotes

| | |
|---|---|
| 1 | Judge McKeague presently has under advisement a motion by plaintiffs to apply the law of the Republic of Mexico to provide the rule of decision in this case. (Motion, docket # 67). My provisional choice of Texas law to govern this discovery dispute is obviously subject to revision should Judge McKeague decide that the law of Mexico applies. |

**End of Document**    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

2015 WL 2201696
Only the Westlaw citation is currently available.
United States District Court,
W.D. Michigan,
Southern Division.

Peter GALINIS, Plaintiff,
v.
BRANCH COUNTY, et al., Defendants.

No. 1:14–cv–00460–PLM.
|
Signed May 11, 2015.

**Attorneys and Law Firms**

Peter Galinis, Jackson, MI, pro se.

S. Randall Field, Shaina R. Reed, Johnson Rosati Schultz & Joppich PC, Lansing, MI, Michael S. Bogren, Susan Anne Finnegan, Plunkett Cooney, Kalamazoo, MI, for Defendants.

*MEMORANDUM OPINION*

PHILLIP J. GREEN, United States Magistrate Judge.

**\*1** This matter is before the Court on defendants Branch County, Branch County Sheriff's Office, and Branch County Sheriff C. John Pollack's ("Branch County defendants") motion for attorney's fees and expenses (Dkt.46), pursuant to Federal Rule of Civil Procedure 37(a)(5), relating to their successful motion to compel discovery. (Dkt.33). They seek $930.00 in fees and $30.40 in costs. (Dkt. 46–1, Page ID 378). Plaintiff objects generally to the award of fees and costs, as well as to the amount sought by Branch County defendants. (Dkt.56). Having considered the parties' written submissions, as well as the oral arguments during the March 31, 2015, hearing on the motion to compel, Branch County defendants' motion will be granted in part and denied in part.

*Procedural and Factual Background*

This case arises from plaintiff's arrest on August 1, 2011, at the Branch County courthouse. Plaintiff alleges that defendants violated his Fourth and Fourteenth Amendment rights, and that the arresting officers violated various provisions of state law. (First Amended Complaint, Dkt. 25). Plaintiff is representing himself.

On May 12, 2014, Branch County defendants served plaintiff with a request to produce documents. (Dkt. 33–1, Page ID 284–86). Their discovery request was premature. *See* FED. R. CIV. P. 26(d)(1) (generally precluding discovery until the parties have conferred as required by Rule 26(f)). The parties filed their Joint Status Report on September 15, 2014. (Dkt.12). Accordingly, the Court treated Branch County defendants' document requests as having been served on that date. (Amended Order at 2, Dkt. 44, Page ID 340). Plaintiff's responses were due October 21, 2014. *See* FED. R. CIV. P. 6(a)(1), (d).

On November 7, 2014, having received no response to their document requests, Branch County defendants served plaintiff with a notice of taking his deposition *duces tecum*. (Dkt. 33–4, Page ID 298–301). Their notice requested that plaintiff "bring with him to his deposition any and all records, documents, reports, and memoranda not produced to date and that in any way relate to the claims involved in this matter." (*Id.,* Page ID 299). Plaintiff appeared for his deposition, but did not bring any documents with him. (Dkt. 33–5, Page ID 307–08). Plaintiff testified that he had a file of documents concerning this case "about 4 inches thick," but that he needed "to go through and sift through everything." (*Id.,* Page ID 307).

On December 9, 2014, having still not received a response to their document requests, Branch County defendants served their first set of interrogatories and a second request to produce documents. (Dkt. 33–1, Page ID 287–88). Defense counsel included a cover letter, which explained to plaintiff that he had thirty days to respond to discovery requests, and not until the close of discovery (March 20, 2015), as plaintiff had previously asserted. (Dkt. 33–2, Page ID 290). Plaintiff's deadline for responding to the December 9, 2014, discovery requests was January 12, 2015. *See* FED. R. CIV. P. 33(b)(2); 34(b)(2)(A); and 6(a)(1), (d).

**\*2** On or about December 22, 2014, more than two months late, plaintiff served his responses to Branch County defendants' first document requests. (Dkt. 33–3, Page ID 292–96).[1] While it is unclear from the record when plaintiff served his answers and responses to Branch County defendants' December 9, 2014, discovery requests, plaintiff dated them March 11, 2015.[2] Even giving plaintiff the benefit of the

doubt that he served his responses on that date, they were nearly two months late.

Plaintiff provided no documents responsive to any of the discovery requests. His answers to the interrogatories were, for the most part, non-responsive.

In each of his responses to the document requests and interrogatories, plaintiff raised a number of objections. These objections were untimely. *See* FED. R. CIV. P. 33(b)(2), 34(b)(2)(B), (C). Accordingly, they were waived. *See* FED. R. CIV. P. 33(b)(4); *In re United States,* 864 F.2d 1153, 1156 (5th Cir.1989) (holding that the waiver provision of Rule 33 applies equally to Rule 34); *Carfagno v. Jackson National Life Ins. Co.,* No. 5:99–cv–118, 2001 WL 34059032, *1 (W.D.Mich. Feb.13, 2001) ("As a general rule, failure to object to discovery requests within the thirty days provided by Rules 33 and 34 'constitutes a waiver of any objection.'") (citing *Richmark Corp. v. Timber Falling Consultants,* 959 F.2d 1468, 1473 (9th Cir.1992); *Standard Chlorine of Delaware, Inc. v. Sinibaldi,* 821 F.Supp. 232, 261 (D.Del.1992) (collecting cases)); *see also Martinez v. Cook County,* No. 11 C 1794, 2012 WL 6186601, *3 n. 4 (N.D.Ill.Dec.12, 2012) ("[C]ourts have generally recognized that Rule 33's automatic waiver provision applies to Rule 34 as well.") (citing *Autotech Technologies Ltd. P'ship v. Automationdirect.com, Inc.,* 236 F.R.D. 398 n. 2 (N.D.Ill.2006)). Moreover, and for the reasons stated on the record in the March 31, 2015, hearing, the Court ruled that plaintiff's objections were unfounded. (Order at 4, Dkt. 44, Page ID 342).

In an abundance of caution, however, and giving plaintiff the benefit of considerable doubt, the Court limited its order to compel in several ways: first, it did not require plaintiff to respond to two of Branch County defendants' interrogatories, and it modified the terms in one interrogatory; second, it ruled that plaintiff had satisfactorily answered two interrogatories; and third, in recognition that plaintiff may have already provided the information sought in one of the interrogatories, it qualified the order accordingly. (*See id.* at 5, Page ID 343). Noting these exceptions, the Court granted Branch County defendants' motion to compel discovery. (*Id.*).

### Discussion

Under the facts outlined above, there is a sufficient basis for awarding reasonable attorney's fees and expenses to defendants. Branch County defendants rely on Rule 37(a)(5)(A), which provides, in pertinent part: "If the motion [to compel] is granted—or if the disclosure or requested discovery is provided after the motion was filed—the court *must,* after giving an opportunity to be heard, require the party ... whose conduct necessitated the motion ... to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." (Emphasis supplied). There are only three exceptions to this rule. *See* FED. R. CIV. P. 37(a)(5)(A) (i-iii).

**\*3** Plaintiff does not cite to any of these exceptions in opposing the fee petition here. He does, however, argue that his objections to Branch County defendants' discovery requests were "based on a reasonable belief of being meritorious." (Pltf. Resp. at 4, Dkt. 56, Page ID 560). This argument sounds much like the second of the three exceptions: "the opposing party's nondisclosure, response, or objection was substantially justified." FED. R. CIV. P. 37(a) (5)(A)(ii). Construing the facts as favorably to plaintiff's position as reason will allow, it cannot be said that his noncompliance with his discovery obligations was "substantially justified."

Plaintiff was exceedingly late in all of his responses to Branch County defendants' discovery requests. Even then, he provided no documents and his answers to the interrogatories were, for the most part, non-responsive. Despite Branch County defendants' repeated efforts to obtain discovery, and their efforts to explain the rules and consequences of noncompliance, plaintiff stubbornly refused to provide information and documents to which Branch County defendants were plainly entitled.

In his primary argument against the fee petition, plaintiff contends that, because the Court did not require him to respond to some of the interrogatories, Rule 37(a)(5)(A) provides the wrong standards. Instead, he contends that the Court should review the fee petition under the standards of Rule 37(a)(5)(C). (Pltf. Resp. at 2–3, Page ID 558–59). Rule 37(a)(5)(C) provides, in pertinent part: "If the motion is granted in part and denied in part, the court ... *may,* after giving an opportunity to be heard, apportion the reasonable expenses for the motion." (Emphasis supplied).

Plaintiff has a point. Although the Court's April 2, 2015, order stated simply that the motion to compel was granted, it did exempt four interrogatories outright and it qualified the effect of the order with respect to two other interrogatories. (*See*

Order at 5, Dkt. 44, Page ID 343). Not allowing form to take precedence over substance, the order must be viewed as one granting the motion to compel in part and denying it in part. Accordingly, the Court will follow the provisions of Rule 37(a)(5)(C), as plaintiff suggests.

While Rule 37(a)(5)(C) provides the Court greater discretion in deciding whether to award fees and costs, there is no basis for exercising that discretion in plaintiff's favor here. As noted above, plaintiff's conduct with respect to his discovery obligations was wholly unjustified, even giving him the benefit of the doubt as a *pro se* litigant.

Accordingly, the Court will award Branch County defendants reasonable attorney's fees and expenses that were incurred in making their motion to compel. The award of costs is the norm, rather than the exception. *Eastern Maico Distribs., Inc. v. Maico–Fahrzeugfabrik,* 658 F.2d 944, 949 n. 4 (3d Cir.1981); *see Boles v. Lewis,* No. 1:07–cv–277, 2009 WL 2021743, at * 3 (W.D.Mich. July 7, 2009).

**\*4** Defense counsel seek a $150.00 hourly rate. (Dkt. 46–1, Page ID 377–78). This is a reasonable rate. A reasonable hourly rate multiplied by "the proven number of hours reasonably expended on the case by the attorney" typically produces a reasonable attorney's fee. *Isabel v. City of Memphis,* 404 F.3d 404, 415 (6th Cir.2005) (citing *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)).

The Sixth Circuit has identified a dozen factors that may assist lower courts in determining the reasonableness of an hourly rate, or a number of hours worked:

> (1) time and labor required; (2) the novelty and difficulty of the questions presented; (3) the skill needed to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time and limitations imposed by the client or the circumstances; the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesireability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in "similar cases."

*Isabel,* 404 F.3d at 415. Here, the first two factors are the most important. Plaintiff's failure to produce discovery caused Branch County defendants to expend time in making their motion to compel, but the questions presented in connection with that motion were neither novel nor difficult.

In order to accept the claimed time expenditure, "the documentation offered in support of the hours charged must be of sufficient detail and probative value to enable the court to determine with a high degree of certainty that such hours were actually and reasonably expended in the prosecution of the litigation." *United Slate, Tile & Composition Roofers Ass'n Local 307 v. G. & M. Roofing & Sheet Metal Co.,* 732 F.2d 495, 502 n. 2 (6th Cir.1984).

The Court has reviewed the time entries of Branch County defendants' counsel. (Dkt.46–10). It indicates that counsel expended 1.6 hours drafting the motion and accompanying brief. (*Id.,* Page ID 377). It also indicates that counsel expended 4.4 hours appearing at the March 31, 2015, hearing. (*Id.,* Page ID 378). While the expenditure of time associated with drafting the motion is reasonable, plaintiff correctly points out that the hearing lasted no longer than two hours, approximately thirty minutes of which was devoted to plaintiff's oral motion to compel. (Pltf. Resp. at 5–6, Dkt. 56, Page ID 561–62). Allowing an hour of travel time each way to attend the hearing, and 1.5 hours for the hearing, the number of hours relating to the March 31, 2015, hearing is reduced to 3.5.

Branch County defendants have also failed to sustain their burden of justifying the other expenses listed in their itemized breakdown of costs. Accordingly, they will be denied.

The total number of hours reasonably expended on the motion to compel is 5.1 (1.6 hours drafting the motion and 3.5 hours relating to the hearing). Multiplying 5.1 hours by the $150.00 hourly rate, results in a total recoverable fee of $765.00.

**\*5** The Court is not reducing the fee award under the proportionality provision of Rule 37(a)(5)(C). Plaintiff's reliance on the fact that the Court partially denied the motion to compel is misplaced. The Court's exemption of several of the interrogatories from the order to compel was,

within the context of the whole, de minimus. Moreover, with the exception of the two interrogatories the Court found sufficiently answered, the exemptions were the result of the Court's liberality, not the merit of any of plaintiff's objections, all of which were waived by their untimely service.

*Conclusion*

For the reasons set forth herein, Branch County defendants' motion for attorney's fees and expenses (Dkt.46) will be granted in part and denied in part. Their motion will be granted to the extent that they will be awarded $765.00 under Federal Rule of Civil Procedure 37(a)(5)(C). The remainder of their motion will be denied.

**All Citations**

Not Reported in F.Supp.3d, 2015 WL 2201696

**Footnotes**

1   The date on plaintiff's responses is poorly written. It appears to be either December 22, 2014, or December 28, 2014. (*See* Dkt. 33–3, Page ID 296). The Court gave plaintiff the benefit of the doubt, and used the December 22, 2014, date. (*See* Order at 3, Dkt. 44, Page ID 341).

2   Plaintiff failed to append his responses to these discovery requests to his response to the motion to compel, and he failed to bring a copy to the March 31, 2015, hearing on the motion to compel. Counsel for the City of Coldwater provided the Court with a copy during the hearing. It is appended to the Courts Order of April 2, 2015. (*See* Dkt. 44–2).

**End of Document**     © 2024 Thomson Reuters. No claim to original U.S. Government Works.

2022 WL 7717529
Only the Westlaw citation is currently available.
United States District Court, W.D.
Michigan, Southern Division.

MICHIGAN DEPARTMENT OF ENVIRONMENT,
GREAT LAKES, AND ENERGY, and The Michigan
Department of Natural Resources, Plaintiffs,
v.
Lee MUELLER, et al., Defendants.

No. 1:20-cv-528
|
Signed May 17, 2022

**Attorneys and Law Firms**

Danielle Allison-Yokom, MI Dept. Attorney General (ENRA-Lansing), Environment, Natural Resources & Agriculture Division, Lansing, MI, Nathan A. Gambill, Michigan Department of Attorney General, Lansing, MI, for Plaintiffs.

Lawrence A. Kogan, The Kogan Law Group, P.C., New York, NY, for Defendants Lee Mueller, Boyce Michigan, LLC, Edenville Hydro Property, LLC, Boyce Hydro Power, LLC, Boyce Hydro, LLC, WD Boyce Trust 2350, WD Boyce Trust 3649, WD Boyce Trust 3650.

### ORDER FOLLOWING HEARING

Paul L. Maloney, United States District Judge

**\*1** Defendants Lee W. Mueller and Edenville Hydro Property, LLC (for this order, collectively, "Defendants") have failed to comply with this Court's case management order (CMO) and multiple discovery deadlines. This Court held a Rule 16 scheduling conference on January 24, 2022, where the Court set the deadlines in the CMO according to the parties' status reports (ECF Nos. 70, 71). Once those dates are set, the Court expects compliance. If a party is unable to comply with a discovery deadline or a date in the CMO, the Court expects that party to take action to resolve the issue (such as by filing a motion for an extension of time after conferring with opposing counsel) *before* the deadline passes. Simply refusing to comply with the CMO—or filing a motion to stay discovery after missing multiple discovery deadlines —is not acceptable with this Court.

On March 28, 2022, Defendants filed a Rule 12(b)(6) motion to dismiss (ECF No. 76). Although Defendants' initial disclosures were due on March 15, Defendants have refused to provide their initial disclosures because Defendants believe that "it makes little, to no, sense to provide initial disclosures until the Court rules on the motion [to dismiss]." (ECF No. 78-1 at PageID.2782). Following Defendants' failure to timely respond to Plaintiffs' first set of interrogatories and first requests for production of documents (RFP), Plaintiffs informed Defendants that they had waived all objections to the discovery requests, and that Plaintiffs intended to file a motion to compel (*see* ECF No. 82-3 at PageID.2853). Defense counsel replied that responses to the discovery requests were "being prepared and will be forthcoming" and that there was no need to file a motion to compel (*Id.* at PageID.2852). However, after Defendants' untimely responses consisted almost entirely of "general" and "specific" objections (*see* ECF Nos. 82-5, 82-6), Plaintiffs filed a motion to compel Defendants to comply with the CMO and to respond to Plaintiffs' first set of interrogatories and RFPs without objections (ECF No. 81). The Court held a hearing on these motions on May 13, 2022.

For the reasons stated on the record, the Court denies Defendants' motion to stay discovery. Although Defendants' counsel filed a motion to dismiss,[1] filing a motion to dismiss does not automatically stay discovery—especially if the motion to dismiss is filed *after* a discovery deadline has already passed. *See AFT Mich. v. Project Veritas*, 294 F. Supp. 3d 693, 694 (E.D. Mich. 2018) ("It is also well established that the filing of a motion to dismiss does not automatically warrant a stay of discovery."); *Williams v. New Day Farms, LLC*, No. 2:10-CV-0394, 2010 WL 3522397, at \*1 (S.D. Ohio Sept. 7, 2010) ("[O]ne argument that is usually deemed insufficient to support a stay of discovery is that a party intends to file, or has already filed, a motion to dismiss for failure to state a claim under Rule 12(b)(6)."). Moreover, a "change in litigation strategy" (ECF No. 78 at PageID.2774) does not warrant noncompliance with, or a stay of, discovery. Defendants' initial disclosures were due on March 15, 2022 (ECF No. 73), and over two months later, Defendants have still failed to provide them. Defendants must produce their initial disclosures within 14 days of the date of this order.

**\*2** As for Plaintiffs' motion to compel, as stated on the record, the Court finds that Defendants' failure to timely respond to Plaintiffs' discovery requests results in Defendants' waiver of objections to the discovery requests.

Under Rules 33 and 34, opposing parties have 30 days to respond to interrogatories and RFPs, *see* Fed. R. Civ. P. 33(b)(2), 34(b)(2)(A), and "[a]s a general rule, failure to object to discovery requests within the thirty days provided by Rules 33 and 34 'constitutes a waiver of any objection.' " *Carfango v. Jackson Nat'l Life Ins. Co.*, No. 5:99CV118, 2001 WL 34059032, at *1 (W.D. Mich. Feb. 13, 2001); *see also* Fed. R. Civ. P. 33(b)(4) ("Any ground not stated in a timely objection is waived unless the court, for good cause, excuses the failure."). This waiver rule equally applies to objections that would rest on privilege or immunity. *See Carfango*, 2001 WL 34059032, at *2 ("This rule applies with equal force to all objections, including those based on attorney-client privilege or attorney work product.").

Except for Plaintiffs' RFP #1, which the Court will address after Plaintiffs have responded to Defendants' motion for a protective order (ECF No. 96), the Court compels Defendants to properly and completely answer Plaintiffs' first set of interrogatories and RFPs, absent objections, within 14 days of this order. All three factors—the reason for tardy compliance, prejudice to the opposing party, and the facial propriety of the discovery requests—weigh in favor of enforcing the waiver. *See Kuriakose v. Veterans Affairs Ann Arbor Healthcare Sys.*, No. 12-cv-12972, 2016 WL 4662431, at *2 (E.D. Mich. Sept. 7, 2016) (citing *Carfango*, 2001 WL 34059032, at *1). Although Defense counsel objects to this waiver in regard to materials that he believes are protected by attorney-client privilege,[2] the waiver rule is explicit in that it "applies with equal force to all objections, including those based on attorney-client privilege or attorney work product." *Carfango*, 2001 WL 34059032, at *2. As such, Defendants have waived *all* objections to Plaintiffs' first set of interrogatories and RFPs for their failure to timely respond.

To the extent that Plaintiffs wish to pursue sanctions, they may do so by filing a sworn affidavit or declaration attesting to "reasonable expenses incurred in making the motion [to compel], including attorney's fees." Fed. R. Civ. P. 37(a)(5)(A). Defendants shall have 21 days from the date of service of the sworn statement to respond to Plaintiffs' request for sanctions.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' motion to stay discovery (ECF No. 78) is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiffs' motion to compel (ECF No. 81) is **GRANTED** in part and **RESERVED** in part. The Court reserves on compelling Defendants' response to RFP #1 until after Plaintiffs have responded to Defendants' motion for a protective order. The remainder of Plaintiffs' motion to compel is granted.

**IT IS FURTHER ORDERED** that Plaintiffs' motion for sanctions (ECF No. 81) is **RESERVED**. The Court will decide whether to award Plaintiffs' request for sanctions following Defendants' response, as outlined above.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2022 WL 7717529

---

**Footnotes**

1  The Court notes that Defendants filed a Rule 12(b)(6) motion to dismiss without indicating their intent to do so in their status report or at the Rule 16 conference.

2  Defense counsel also claims that he asserted the issue of attorney-client privilege in his status report (ECF No. 71 at PageID.2711), but that claim is simply untrue. Defendants did not raise attorney-client privilege arguments until after they had waived all objections to Plaintiffs' discovery requests (*see* ECF Nos. 78-6, 89).

Case 1:23-cv-00494-PLM-SJB    ECF No. 23-6, PageID.122    Filed 02/26/24    Page 19 of 20

**United States v. Thody, Not Reported in Fed. Supp. (2020)**
2020 WL 13553263

2020 WL 13553263
Only the Westlaw citation is currently available.
United States District Court, W.D.
Michigan, Southern Division.

UNITED STATES of America, Plaintiff,
v.
Daniel THODY, et al., Defendants.

Case No. 1:19-cv-339
|
Signed September 30, 2020

**Attorneys and Law Firms**

Edward J. Murphy, Jeffrey N. Nunez, U.S. Department of Justice, Tax Division Washington, DC, Michael L. Shiparski, U.S. Attorney, Grand Rapids, MI, for Plaintiff.

Daniel I. Thody, Grandville, MI, Pro Se.

Walter-Eliyah Thody, Portland, OR, Pro Se.

## ORDER

SALLY J. BERENS, United States Magistrate Judge

 *1  The Court has before it Plaintiff United States of America's Motion to Compel Defendant Daniel I. Thody to Answer Interrogatories and Produce Documents. (ECF No. 91.) Defendant has filed a response to Plaintiff's motion in which he asserts that the Court lacks jurisdiction over this matter. (ECF No. 96.) Because Defendant's jurisdictional argument is not responsive to the motion to compel, the Court has construed it as a motion to dismiss for lack of jurisdiction and addressed it in a separate Report and Recommendation.[1] As for the motion to compel, it is **GRANTED** for the following reasons.

On February 18, 2020, Plaintiff served interrogatories and requests for production of documents on Defendant Daniel Thody. (ECF No. 86.) Many of the requests asked for information or documents pertaining to Defendant Walter-Eliyah Thody's interest in the real property described in the amended complaint. Defendant did not respond to the discovery requests within the required time. *See* Fed. R. Civ. P. 33(b)(2), 34(b)(2). On April 21, 2020, Plaintiff's counsel sent a letter to Defendant notifying him that Plaintiff would file a motion to compel unless Defendant responded to the discovery requests on or before April 24, 2020.

Defendant emailed his responses to Plaintiff's counsel on April 24, 2020. (ECF No. 91-2 at PageID.392–83.) Defendant objected to request for production numbers 3–5, 7, and 8 and interrogatory numbers 2–5 on the basis of privilege, although he did not identify the nature of the claimed privilege. (ECF No. 91-1 at PageID.369–371, 374–75.) Defendant also provided evasive or incomplete answers to request for production numbers 1, 10, and 11 and interrogatory number 6. When Plaintiff's counsel sought clarification of the claim of privilege, Defendant quoted a passage from *Hale v. Henkle*, 201 U.S. 43 (1906)—a case dealing with the issuance of a grand jury subpoena. (ECF No. 91-2 at PageID.381.) Unable to persuade Defendant that *Hale* does not apply in this case, Plaintiff filed the instant motion.

Plaintiff argues that Defendant waived his objections by failing timely to assert them. A party served with interrogatories must "serve its answers and any objections within 30 days after being served with the interrogatories." Fed. R. Civ. P. 33(b)(2). Similarly, a party to whom a request for production of documents "is directed must respond in writing within 30 days after being served." Fed. R. Civ. P. 34(b)(2)(A). In general, objections to discovery requests are deemed waived when they are not timely asserted. *See Galinis v. Branch Cty.*, No. 1:14-cv-460, 2015 WL 2201696, at *2 (W.D. Mich. May 11, 2015) (holding that the plaintiff's untimely objections to document requests and interrogatories were waived); *Drutis v. Rand McNally & Co.*, 236 F.R.D. 325, 337 (E.D. Ky. 2006) ("Defendants correctly point out that any objections plaintiffs may have had to the interrogatories in question have been waived."); *Carfagno v. Jackson Nat'l Life Ins. Co.*, No. 5:99-cv-118, 2001 WL 34059032, at *1 (W.D. Mich. Feb. 13, 2001) ("As a general rule, failure to object to discovery requests within the thirty days provided by Rules 33 and 34 'constitutes a waiver of any objection.' ") (quoting *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1473 (9th Cir. 1992)). A waiver may occur even if the objection is based on privilege. *In re Budrow*, No. 94-32974-K, 1998 WL 35324075, at *3 (Bankr. W.D. Tenn. Apr. 22, 1998). Defendant does not address Plaintiff's waiver argument in his response and, accordingly, fails to offer any basis or ground to excuse his waiver. As noted in *Carfagno*, *supra*, "[i]f the time limits set forth in the discovery rules are to have any meaning, waiver is a necessary consequence of dilatory action in most cases." 2001 WL 340590032, at

Case 1:23-cv-00494-PLM-SJB    ECF No. 23-6,  PageID.123   Filed 02/26/24   Page 20 of 20

United States v. Thody, Not Reported in Fed. Supp. (2020)
2020 WL 13553263

*1. Therefore, Defendant has waived his objections, including those based on privilege, to Plaintiff's discovery requests.

 **\*2**  In any event, Plaintiff's claim of privilege fails. The case Plaintiff cites in support of this argument, *Hale v. Henkle*, is inapposite to this case as it involved a grand jury subpoena, not discovery in a civil action. 201 U.S. at 74. Moreover, to the extent Defendant asserts his Fifth Amendment right against self-incrimination as a basis for refusing to respond to any of Plaintiff's discovery requests, he has waived the right to assert the privilege by failing to articulate how it applies to any specific interrogatory or document request. *See United States v. Smith*, No. 1:99-cv-974, 2017 WL 1047639, at \*4 (S.D. Ohio Mar. 20, 2017) ("The Court finds that, in light of Mr. Smith's failure to specifically assert a Fifth Amendment right and its applicability to any specific numbered interrogatory or request for production, he has waived any such right to the extent it may exist with respect to the outstanding discovery requests.").

Plaintiff requests that, in light of Defendant's failure to respond to its discovery requests, the Court set a date for Defendant's compliance, with the condition that Defendant and his father, Defendant Walter-Eliyah Thody, be precluded from introducing testimony or documents on the issues addressed by the discovery in the event Defendant fails to comply. Plaintiff contends that its request is reasonable as to Defendant Walter-Eliyah Thody as well because Defendant Daniel Thody claims that he acted as an agent for Walter-Eliyah Thody and/or his wholly-owned company pursuant to a power of attorney in purchasing the subject real property. (ECF No. 96 at PageID.408; ECF No. 96-10.) Defendant argues that the Court should not extend the scope of a sanction for noncompliance to "any evidence or testimony in support of any defenses" because Defendant is not seeking to use documentation or evidence to demonstrate a $950,000 or substantially similar transaction supporting the lien's validity. Rather, Defendant argues, "the lien's validity rest on entirely different issues." (ECF No. 96 at PageID.408.) However, whatever Defendant's claimed basis for lien's validity, Plaintiff's discovery request asked for "[a]ny and all documents and tangible things that you may use to support your claims and defenses in this case," which covers any defense that Defendant may raise to demonstrate that the lien is valid. Thus, it is appropriate to preclude Defendants from introducing testimony or evidence regarding the validity of Defendant Walter-Eliyah Thody's claimed lien—on any basis —if Defendant fails to comply.

Therefore, within **21 days** of the date of this Order, Defendant shall fully answer Plaintiff's Requests for Production of Documents numbers 1, 3, 4, 5, 7, 8, 10, and 11 and Interrogatories 2, 3, 4, 5, and 6 served on Defendant on February 18, 2020. If Defendant fails to fully answer these discovery requests within the specified time, Defendants shall be precluded from introducing testimony or documents offered to show the validity of Defendant Walter-Eliyah Thody's asserted lien on the subject property.

**IT IS SO ORDERED**.

**All Citations**

Not Reported in Fed. Supp., 2020 WL 13553263

---

## Footnotes

1 | Plaintiff has filed a limited response to Defendant's jurisdictional argument, construing Defendant's response as a motion to dismiss for lack of jurisdiction. (ECF No. 97.) Defendant has filed a reply to Plaintiff's response. (ECF No. 100.)

---